Today is 2017-1850, Autonomy v. Auris Medical The board reversibly aired two ways. First, it accorded Auris the benefit of its earliest filing date. Second, it denied that Auris's claim 9, the only Auris claim still in the case, lacked written description. In both cases, they made similar errors. The parties had briefed the case in a very standard way. The board departed from that reasoning, sui sponte in the final decision. In each case, it supplied its own justification for granting relief to Auris. If Auris sought a continuing patent application, not a continuation in part, if we agree with you that the spec doesn't meet written description requirements for new claims of the continuing application, isn't the correct approach to find those claims invalid rather than what you say treating the application as effectively a continuation in part? Okay. Under this Court's own case law, which we don't dispute, a preliminary amendment that is filed contemporaneously with the filing of the continuation application is treated as providing disclosure that's part of that application. The consequence in this case, because the board expressly found, and we certainly agree, that disclosure was not in the original application, the effect is that it's a continuation in part. The consequence of that is if that were the only support, and we don't even accept that, but if that were the only support, they would have a 2014 filing date. Auris very sensibly doesn't want to defend that position because a 2014 filing date is horrible for them. Our specification with claims and disclosure, the board found disclosure going back at least to 2009 in our chain of applications. That's not contested. We have thought that your filing date for purposes of this is 2013. Even if it were 2013? You mean even if? I thought that you abandoned your claims to an earlier filing date for purposes of this appeal. No. For purposes of this appeal, did you argue entitlement to an earlier filing date? That wasn't contested, Your Honor. The board accorded us an earlier filing date all the way back to 2009. We had argued for even earlier dates. We are not contesting those earlier dates for the purposes of the appeal. But it's uncontested by anybody that we have priority of at least back to 2009. So as long as you're before 2014, if the preliminary amendment is the only thing that gives them a basis for written description support, then your view is you get priority. We've got two different issues going on here. Judge Wallach's question was about the written description. If we give them a 2014 written description date, then they would be unpatentable over our published application. They'd be unpatentable over the prior art we said we wanted to apply and the board never gave us a chance to. Interestingly enough, if you disagree with us on the other motion, on the accorded benefit motion, then they'd also be unpatentable over their own disclosure under an Encyclopedia Britannica theory. So they don't argue for a 2014 date. It would be horrible for them. We agree that it is horrible for them. We would have loved if they'd argued what the board, in fact, argued for them. And that's the significant point here. It's been suggested we waive the issue. We addressed the preliminary amendment in our motion because the court's case law says we must. They chose not to argue it. I understand that strategic choice, but that's a choice they made. So they waive it. So if we agree with you that the preliminary amendment is the only place which contains the written description support for Oris' claims, then they get the 2014 date unless we were to go with them on what I think is their conditional cross-appeal and unless we were to find your claims were anticipated by their early PCT publication. And this case is a vacated remand. Is that correct? I don't think so, for at least two reasons, Your Honor. First of all, the board's theory does not account for all of the claims, in part because of the order that they decided the issues in. They actually, on the written description issue, never addressed claim nine. You're just confusing me, and I need you to make this clear. I don't understand. I thought that the issue, if I were to agree that the only written description support for Oris' claim came in the preliminary amendment, that gives them a 2014 date. You have a date that's earlier than that. So unless your claims are rendered anticipated, I thought this case goes back and that's all I have to decide. What am I misunderstanding? I think I misunderstood your question, Your Honor. Setting aside for the moment that we disagree even with the board's decision, if that is your finding on appeal, then it would go back. All they would have is a 2014 date. There would be a host of prior art issues that would be raised against them and that the board would have to get into. And we would prevail because, as I said, 2014 is a very, very late date in this art. We don't think you should even go to that point, though, because among other things, the only claim they have left in this case is claim nine. The board doesn't address claim nine in its written description analysis at all except to note that it's a dependent claim. But that actually works against them because that means there's an additional limitation that's not in claim one. We specifically addressed claim nine in our briefing. We have specifically addressed expert testimony about claim nine and its relationship to the preliminary amendments. Yeah, but we can't assess those questions in the first instance, right? And you don't need to. My point is simply to say ORRS never made this argument. It never made this argument. There is no evidence on the other side of the table. You are really confusing me a lot in this presentation, and maybe it's not your fault. Maybe it's the dense and confusing factional nature, and no doubt it is the board's inconsistent opinion. But I don't understand. You were suggesting in response to my question about why isn't this a straightforward vacate and remand. They get the preliminary amendment date, which is after your date. If I say your claims are not anticipated based on their testimony, you said, oh, well, you don't even have to do that, Your Honor, because. And I don't understand anything you said thereafter because most of the stuff you said would require us to make fact findings on appeal. I disagree. I disagree. What I'm trying to do is give you confidence that the facts already in the case don't require any further development. They're already there. But they require further development. We don't get to make fact findings. It doesn't matter what the record demonstrates. So if you remand, there's nothing for the board to do. Ours never put any counterfacts in place. So there's uncontroverted testimony. Well, you have to argue that to the board, right? It's certainly within the court's discretion to send this back to the board. I'm just trying to point out there's nothing left to do if you send this back to the board. I'd like, if I can. Well, at the end of the day, you would want the board to, on the interference, to enter a final judgment in your favor, right? We can't do that. No. So I've just got to go back. If you're right on basically, you know, the first motion and the fourth motion, if you're right, then. I actually don't want to. Obviously, you definitely have the power to remand, and I don't want to get bogged down in that issue. I mean, we're asking questions that are so favorable to you. The fact that you're trying to confuse us is really not to your advantage. I apologize, Your Honor. That's certainly not the intention. What I would like to do, though, is pivot to the other issue, the accorded benefit, because in a lot of ways, I think the error is even clearer for that one. Well, let me stick with the first issue, because your friend on the other side, as you point out, the red brief doesn't even try to defend what the board did for good strategic reasons. So, but your friend on the other side says, even if that's the preliminary amendment is not where they should have looked, the original specification was sufficient to provide the support. The board specifically rejected that, and I think since I have about a minute and a half left, I'd like to segue into the accorded benefit motion, because that's exactly the issue that gets presented there. Everybody agrees that ORIS does not have an express disclosure of an embodiment within the scope of the invention. Instead, their argument is that once killed in the yard, reading their argument would immediately envisage sort of a virtual embodiment within the scope. The problem with that argument, first of all, is if you're judging this not with hindsight looking at the claims as they are now, but looking at the specification as once killed in the yard would have read it at the time of filing, you would face three express disclosures that the invention is actually something else. It doesn't involve a fluoroquinolone, doesn't involve a specific carrier, doesn't treat the same diseases, isn't suspended. What autonomy argued following this court's very clear case law for this fact situation where there's no express embodiment is, is there sufficient guidance? Are there blaze marks that would lead you to pick and choose the right combination without using hindsight? In the anticipation motion applying that standard and following the arguments of the parties, the board correctly answered no. What's odd is they then came up with their own theory in the accorded benefit motion, pieced together their own embodiment without any disclosure, and actually reached a wrong conclusion because among other things, it actually doesn't meet the requirements of the count. The count requires a suspension at the time of treatment. They speculate without any disclosure or inherency analysis that there might have been a suspension at some point during the creation of the mixture that expressly ends up being a solution, not a suspension. So again, because they sort of leapt out on their own theory, this was never developed. You know, the clear error in that approach was never pointed out to them below because they never gave a chance to do so. I realize I'm in my rebuttal. If the court doesn't have any more questions. Okay, thank you. Thank you, Your Honor. Mr. Graves. May it please the court, Jonathan Graves for Oris Medical. The board was correct, Your Honors, in finding that the common Oris specification did in fact disclose an embodiment within the scope of the interference count, namely via example two in the specification plus the expressed disclosure that additional active ingredients, including the identified antibiotic fluoroquinolone, could be added to the composition. Do you agree that the board relied solely on the preliminary amendment in finding adequate written description? On written description, yes, not on the priority question. But on written description, the board relied on the 2014 preliminary amendment, which we believe was in error because the same 2005 specification that I just started to address does in fact provide adequate written description support for the remaining claim, claim nine. But what about the fact that the board made some findings that at least implied the board concluded that you had to look to the preliminary amendment or you wouldn't find enough support? I think the board was just simply wrong about that on the written description issue, Your Honor. Written description is a question of fact, right? It is a question of fact, but the board also made other fact findings in connection with what turned out to be very interrelated issues on priority and anticipation that found in fact... Well, anticipation is a question of fact. It is as well, Your Honor. So if the board supported... So what you're saying, you mean... Go ahead. If the board supported its findings with evidence, how can we overturn them? The evidence is in the board's decision from which this court can first affirm the priority determination and benefit of Oris, two, find anticipation of the autonomy claims if the court reaches that conditional cross appeal, and three, find written description support for claim nine. And here's why. The board found the express teaching from example two, and there's as well as the remaining claim nine, except for the suspension of fluoroquinolone. The board also found correctly that there's expressed disclosure in the 2005 specification of the use or addition of fluoroquinolone into the composition. So are you saying the board made inconsistent findings of fact, one, as it relates to written description, and then the other in connection with your request for priority? They... Or afforded benefit? The board committed legal error in connection with the written description analysis by improperly confining Oris to the specific embodiments. It didn't improperly confine you to that. What it said was all we could find for written description appears in the amendment, right? Yes, but the board specifically seemed to find that ketamine is a mandatory ingredient as required by the specification. That's simply not supported by the specification, and does violence to this court's precedent. How is that a legal error? The legal error is the court, in connection with written description, looked for an express embodiment disclosed in the specification that did not have ketamine. That's an improper reading of this court's precedent about one can more broadly claim than what's expressly disclosed in the specification. And given the board's finding in connection with the priority issue, that the specification has an example of everything for claim nine. They did it in connection with the count, but it holds true for claim nine as well, has an express disclosure in example two of everything but the suspension of fluoroquinolone, and the board's correct finding that the specification expressly teaches the addition of fluoroquinolone as an antibiotic, and the express finding by the board that's correct. Well, you argue, at 36, you argue that fluoroquinolone is disclosed as an antibiotic, and that it was common knowledge to use it in the air, and that's sufficient. Where's the expert proof of those assertions? We provided the expert testimony of Dr. Berkland in support of that, which the board did note in addressing the written description issue. So where is that in the record? I can get a citation for you. Thank you. Your Honor, to Dr. Berkland's declaration. But in addition, autonomy's expert, and we cite this in our brief, admitted that suspension of fluoroquinolone is a trivial task, and the specification expressly discloses the three well-known limited methods for mixing an active ingredient in a liquid, namely dissolution, emulsion, emulsification, and suspension, or dispersion. And there's no dispute among the experts that dispersion means suspension. So what we have here is very connected teachings of everything involved in plain... Wait, I thought the example, too, was ketamine, and it was dissolved, not suspended. Am I misremembering it? No, you're remembering that correctly, Your Honor. The board seemed to find, and we're not sure what they were doing here, but they seemed to find teaching of suspension in example two, which is not correct. However, the specification, and the board found this in connection, albeit with its anticipation ruling at page six of its written decision, the board found there was expressed teaching in the specification, which there is, of these three limited well-known methods of mixing an active ingredient in a liquid. I'm not saying that you should lose, but I can't interpret the board's decision, and in particular its fact findings across these issues, in a way that makes any darn sense at all. And so, I mean, I don't know, I mean, I think the best you can do is try to convince me that, you know, even a blind squirrel finds a nut once in a while, and that's what the board did here. They got it right, even though, you know, they made all these what seemed to be inconsistent fact findings. But I mean, to me, it seems like the appropriate thing to do in light of that is to point that out and to send it back. Respectfully, they made fact findings about what the specification disclosed, and as I was starting to explain to Judge O'Malley, where they went off the reservation was in their interpretation of written description legal standard. And Claim 9 is specifically limited to the treatment of infection. That's what antibiotics like the claim fluoroquinolone do. They treat infection. Ketamine does not treat infection. The experts agree on that. But we can't, that's fact finding. We can't go down that road. Well, the board noted that ketamines are not used to treat infection. Where they erred on the written description analysis was saying that as a matter of law, there had to be some disclosure of an embodiment without ketamine or another arylcycloalkamine. Well, because in this case, the claims require fluoroquinolone, right? Correct. So, I guess I'm having, and it's probably my lack of understanding of the technology, but I'm having a little trouble following you. So, the difficulty is, after the board correctly found that there was an embodiment disclosed in the 2005 PCT application that comes within the scope of the interference count, and they went to the written description analysis... The problem is, I don't see that embodiment. Where is that embodiment in the PCT count application? It's example 2, which... Which doesn't include a suspension, and it doesn't include fluoroquinolone. Correct. So, that embodiment isn't within the scope of the interference count. There's no single expressed embodiment, but one of skill, as a matter of law, one of skill can look to the specification, and if one of skill can envision the claimed combination... To be clear, that's not as a matter of law. That is a factual question. So, your as a matter of law statement is absolutely wrong. No, what I meant to say was, as a legal matter, Your Honor, if there's sufficient disclosure within the specification by which one of ordinary skill can envisage the claimed combination, then that's adequate written description support. The fact findings here by the board support the conclusion on priority. Don't we have cases that say obviousness is not enough to meet the written description standard, that it would be... The fact that it has to be actually expressly taught. Obviousness... You guys keep using this envisage language. I will tell you I hate it. It's bad language. It gets people off track all the time, and I don't think you're using it properly. I think you're trying right now to substitute obviousness in for what needs to be an express written description language, hinging your argument on the envisage language that comes out of the case it comes out of. But the reason it came out of that case is that case involved ranges. I remember looking back at it, and it was a matter of, yes, it actually did in fact disclose a specific example, because the case where the envisage language came from was a chemical compound claim that had a series of ranges, and undoubtedly the point later rendered, described, was a combination that fell within each of the ranges, and that's why the envisage language came into play. It isn't a substitute for obviousness. There was still anticipation, traditional, old-fashioned anticipation in that case. You're now, though, trying to get me to do something different. You're trying to get me to pick for a Quint alone from over here, a suspension from over here, and then combine it with example two. That's different. That's not envisage. Not the way envisage was used in the case it was used in. That's obviousness, and obviousness is not enough for a written description. Understood, Your Honor, but there's guidance here in the specification for taking example two, and then as the specification states, additional or other active ingredients, specifically the one named antibiotic, being fluoroquinolone, can be added to the composition, can be included in the composition. But you don't dispute that example two doesn't teach suspension? Correct. Okay, so where do you get the suspension from? We get the suspension from other disclosure in the specification, which the board noted at page six of its decision, that expressly refers to the limited, well-known ways of mixing an active ingredient into a liquid, namely emulsion, dissolution. But that doesn't make example two an example that actually provides written description for what's in the claim. Correct, but the law does not require that there be a specific example that has all of the elements of the claim for there to be written description support. The guideposts are in the specification. There isn't a lot of picking and choosing to be done here. The spec says, here's an example two. That's got everything except suspension for... Except the board did say that you were doing too much picking and choosing, right? And the board's finding anticipation, frankly, cannot be squared with its finding on priority. Is there a question of obviousness of autonomy's claims, or is it only anticipation? Because what you're saying, what I understand the PCT application to disclose may well render autonomy's claims obvious, but not anticipated in my view of the law. So is that in play at all? Is that part of the analysis? Is that an issue that is alive below, or could be opened up below somehow? I suppose it could be opened up below. The motion was directed to anticipation because, of course, autonomy provoked the interference by copying the Oris claims. And the Oris disclosure, we believe, has each and every element of the autonomy claims, which the board should have also found flowing from its priority support finding, finding an embodiment within the scope of the interference count. I see that I'm now into my rebuttal time. Okay, absolutely. You may save it. Okay, Mr. Torson. Thank you, Your Honor. I'd like to address a few points here. It sounds like there actually isn't much of a question about whether the second embodiment teaches the, anticipates the count or autonomy's claims. I'm happy to address that if there is. What if it renders it obvious, though? What if that disclosure renders it obvious? Well, first of all, of course, that wasn't the argument presented. So as Your Honor points out... Trust me, I'm not deciding it. I'm just questioning. What would happen to your case if it does render it obvious? Well, they would have to move to argue that it was obvious. And, you know, it's too late for them to do that at this point. I'd also like to point out, though, that they keep on doing things, like pointing to the dispersion language. But even the dispersion, that's a contested issue among the parties, whether dispersion even teaches a suspension. It's actually a superset. So now we're getting into envisaging within envisaging. So there's several levels of that that need to go on there. So I think that's a problem. And I thought it was very striking when he said, well, but Claim 9 involves an infection. That's exactly the problem with the analysis, both by my friend and by the board here. They're starting with the claims and seeing if they can use them as a template to pick and choose something within the specification. That is not how these analyses are supposed to be done. You're supposed to look at the disclosure and see if it's providing the guidance. What are we supposed to do? Are we supposed to try to analyze the extent to which the board's factual findings are inconsistent? Or do we simply look at these one motion at a time, and if the first motion moots the others, then it doesn't matter if there were later inconsistent fact findings? I think for the purposes of reversal, you probably can do that. I agree with my friend that basically the anticipation motion and the benefit motion are mirror images of each other. The only one where the board actually did the correct analysis on the arguments the parties provided, on the evidence the parties provided, was the anticipation motion. They got that right because there is no basis for anticipation. Even if obviousness could come into play, even if that had been argued, obviousness is not enough to give them benefit. So they would still lose on that argument for the purposes of benefit, not written description, but for the purposes of the benefit motion, they'd still be stuck with the 2014 date. They'd lose for that reason because they'd be years and years behind us. So again, they can't... I realize I was confusing on the remand question. You guys, the court will of course have to remand the case. I guess my point is, you can outright reverse on, particularly the accorded benefit, because the anticipation findings apply with equal force to the accorded benefit. And the board's already made those findings correctly. So if you agree they got the anticipation motion right, they must have gotten the benefit motion wrong, and they've already made the necessary fact findings that say that my friend's stuck with the 2014 date. So yes, you will have to remand regardless, but you don't have to remand for them to reopen the issues. I specifically would say you shouldn't remand the written description for them to reopen, because of course ORIS didn't make that argument. So it would be inappropriate to remand for them to consider an argument that ORIS doesn't want to be decided. I think that hits most of the points I wanted to... You don't have to do this all your time, that's good to know. Mr. Graves, you've got a little bit of rebuttal time. You're going to have to limit yourself to the cross-appeal issue, which is anticipation. Thank you, Your Honor. You're going to have to cite me to the record. Yes, I was going to do that first. The record citation for Dr. Berklin's testimony that's found at page 42 of our red brief, the block quote of his testimony, with the various appendix page sites. Is that sufficient, Your Honor? Well, I want to know... The board says in that area of its discussion that there was evidence that fluoroquinolone is contraindicated, that it causes undesirable side effects. So I want you to point me to where that's discussed in your expert's testimony. Contraindication of fluoroquinolone? Are you referring, Your Honor, with respect to the priority issue? Let me see. I'll have to... I noted it in passing, and that was my interest. I don't recall that point in the record. At 23, further autonomy asserts that the person having ordinary skill would have known that fluoroquinolones are not approved for treatment of tinnitus, and not ellipsis, and might actually cause them as unwanted side effects. Understood now, Your Honor. There's nothing in the claim language that requires the treatment of tinnitus that count goes to any ear disease, middle or inner ear disease, Your Honor. And there's nothing in Example 2, if I think this is what you may be referring to in the argument, there's nothing in Example 2 limiting that to the treatment of tinnitus. And in fact, the specification says... Oh, I put an ellipsis in there. There's a long list. And in fact, the specification says, you could take Example 2, the disclosure here, and you could add fluoroquinolone for treatment of other diseases, i.e. infections. Okay, I think we're out of time. I thank both counsel for their arguments. The case is taken under submission.